854 F.2d 215
 Gail SIMPKINS, individually and d/b/a De Kane Anesthesia
Service, Plaintiff- Appellant,
v.
SANDWICH COMMUNITY HOSPITAL, Marvin Tice and Gregory
Dickinson, Defendants- Appellees.
 No. 86-2889.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 4, 1987.
Decided Aug. 2, 1988.
 
 Jeffrey B. Levens, Augustine & Kern Ltd., Chicago, Ill., for plaintiff-appellant.
 James E. Hanlon, Jr., Katten Muchin Zavis Pearl Greenberger & Galler, Marita C. Sullivan, Office of Atty. Gen., Chicago, Ill., for defendants-appellees.
 Before FLAUM and MANION, Circuit Judges, and GORDON, Senior District Judge.*
 MANION, Circuit Judge.
 
 
 1
 Plaintiff Gail Simpkins, a nurse, brought this Sec. 1983 action against her private employer and the state for conspiring to suspend and then fire her without according her due process. The district court dismissed her complaint, and we affirm.
 
 
 2
 Taking the allegations of plaintiff Gail Simpkins's amended complaint as true, plaintiff was and still is a registered nurse anesthetist. She was employed by defendant Sandwich Community Hospital ("the Hospital"). The Hospital is a private institution located in Sandwich, Illinois. Defendant Marvin Tice, a private citizen, was the Hospital's president and administrator.
 
 
 3
 On July 11, 1983, defendant Gregory Dickenson, an investigator for the Illinois Department of Registration and Education ("the Department"), was investigating Simpkins' drug record-keeping. He confronted her in the Hospital's parking lot and verbally threatened her with arrest, loss of her nurse's license and loss of employment at the Hospital. Dickenson then "forced" Simpkins to accompany him to Tice's office at the Hospital. Simpkins does not allege that Dickenson physically restrained or otherwise touched her. Inside Tice's office, Dickenson interrogated her about her record-keeping while her immediate superior was present. The Hospital suspended Simpkins the same day.
 
 
 4
 Shortly afterwards, the Hospital mailed to Simpkins a document stating that it suspended her because of allegations contained in the Department's investigative report. Simpkins alleged on information and belief that the information in that report was "confidential," and that the Hospital only received this information as part of a conspiracy with the Department to fire her.
 
 
 5
 More than two years later, the Hospital did fire her, and Simpkins sees the State's hand throughout. Dickenson was present at a meeting on July 19, 1983, regarding the status of Simpkins's employment. In addition, on information and belief, administrator Tice told Dan Riordan, another nurse anesthetist at the Hospital, that he was only doing what the State was telling him to do.
 
 
 6
 Simpkins brought an action pursuant to 42 U.S.C. Sec. 1983 against the Hospital, Dickenson and Tice. She alleged that Dickenson and Tice conspired to suspend and fire her without due process, and that as a result all three defendants are liable for that violation of the due process clause of the Fourteenth Amendment. She further alleged that Dickenson deprived her of due process by using excessive force in conducting his investigation. According to Simpkins, Dickenson used "excessive force, grossly disproportionate to the need for action, under the circumstances." Finally, Simpkins interposed pendent state claims for breach of contract against the Hospital and Tice.
 
 
 7
 The district court granted the defendants' motions to dismiss. Simpkins v. Sandwich Community Hospital, No. 86 C 2386, available in WESTLAW at 1986 WL 10635 (N.D.Ill. Sept. 19, 1986). With regard to the suspension and discharge, the court held that Simpkins failed to adequately allege that a conspiracy existed between the Hospital and the State. Thus, the Hospital's actions were those of a private actor not actionable under Sec. 1983. The court accordingly did not address the pendent claims. In disposing of the excessive force claim against Dickenson, the district court held that Simpkins failed to allege any physical injury, as required by Gumz v. Morrissette, 772 F.2d 1395 (7th Cir.1985), cert. denied, 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986). The district court subsequently found that plaintiff's proposed amended complaint failed to cure the defects in her original complaint. Simpkins v. Sandwich Community Hospital, No. 86 C 2386 (N.D.Ill. Oct. 27, 1986). Simpkins appeals.
 
 
 8
 To make out a Sec. 1983 claim here, Simpkins must allege that the defendants deprived her of a liberty or property right secured by the Constitution and that their conduct arose under color of state law. See, e.g., Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); Toney-El v. Franzen, 777 F.2d 1224, 1226 (7th Cir.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2909, 90 L.Ed.2d 994 (1986). The parties were so eager to slug out the question of whether Simpkins adequately alleged a conspiracy sufficient to attribute the conduct of the private actors to the state that they glossed over the question of what liberty or property interest Simpkins had set forth. We affirm the district court's dismissal of Simpkins's cause that the defendants deprived her of due process in suspending and then firing her precisely because she has failed to allege a cognizable liberty or property interest of which she has been deprived.[1]
 
 
 9
 " 'Liberty' generally includes ... the right 'to work for a living in the common occupations of the community.' " Scott v. Village of Kewaskum, 786 F.2d 338, 340 (7th Cir.1986) (quoting Truax v. Raich, 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915)). But Simpkins did not adequately allege that the defendants prevented her from pursuing her occupation as a nurse. Denial of a liberty interest requires more than just being fired. See Perry v. FBI, 781 F.2d 1294, 1302 (7th Cir.) (en banc) ("a liberty interest is not implicated merely by a reduction in an individual's attractiveness to potential employers."), cert. denied, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986). Here, Simpkins does not allege that she has been deprived of a license (and indeed her counsel acknowledged at oral argument that she still has hers). "Liberty is not infringed by a label of incompetence or a failure to meet a specific level of management skills, which would only affect one's professional life and force one down a few notches in the professional hierarchy." Munson v. Friske, 754 F.2d 683, 693 (7th Cir.1985). In addition, Simpkins does not allege that the defendants publicized her suspected failure to account for drugs. See Yatvin v. Madison Metropolitan School Dist., 840 F.2d 412, 417 (7th Cir.1988); Ratliff v. City of Milwaukee, 795 F.2d 612, 626-27 (7th Cir.1986). According to the story her complaint paints, Simpkins is still free and able to work for any employer in her field. She has not been deprived of any liberty interest.
 
 
 10
 Similarly, Simpkins's desire to be employed by the Hospital is not "property." Property in the constitutional sense is " 'what is securely and durably yours under state (or ... federal) law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain.' " Yatvin, supra, 840 F.2d at 417 (quoting Reed v. Village of Shorewood, 704 F.2d 943, 948 (7th Cir.1983)). Simpkins does not allege that she was legitimately entitled to continue to work for the Hospital. While the complaint's state law contract cause of action describes an employee handbook which provided for discipline hearings and opportunities to present a defense, Simpkins does not allege that this handbook clearly promised she could only be dismissed for cause.[2] Under Illinois law, she is presumed to have been an employee at-will. See Duldulao v. Saint Mary of Nazareth Hospital Center, 115 Ill.2d 482, 106 Ill.Dec. 8, 11-12, 505 N.E.2d 314, 317-18 (1987). Simpkins's counsel acknowledged in her oppositions to the motions to dismiss below that she "is not asserting that she has a 'right to private employment.' " When queried at oral argument about what the constitutional right is that the defendants conspired to appropriate, Simpkins's counsel could only proffer "an expectation of employment" because "she had been on the same job for fifteen years."
 
 
 11
 It is well-settled that a unilateral expectation of continued employment does not create an entitlement that the due process clause protects. See Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). While the employee handbook prepared by the Hospital provided for discipline hearings and opportunities to present a defense, this at most set forth enforceable contractual rights as to a procedure and a state law contract action, see Duldulao, supra, 106 Ill.Dec. at 12, 505 N.E.2d at 318, not a property right to a job. Simpkins does not and cannot allege that the handbook's procedures--were they guaranteed by state law--are mandated by due process or themselves created a property right to her job. See Yatvin, supra, 840 F.2d at 416-17.
 
 
 12
 That leaves only Simpkins's excessive force claim against Dickenson. In dismissing this claim, the district court applied a test from Gumz v. Morrissette, 772 F.2d 1395 (7th Cir.1985), cert. denied, 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986), to test the sufficiency of Simpkins's claim; that test, which invoked Fourteenth Amendment substantive due process, required "severe injuries" and state action which "shocks the conscience." Simpkins, as her counsel acknowledged at oral argument, did not challenge this holding on appeal.
 
 
 13
 Normally, we would not need to say anything further about the matter, except that after oral argument we overruled Gumz in Lester v. City of Chicago, 830 F.2d 706, 712 (7th Cir.1987). In Lester, we held that excessive force in arrest claims should be determined only under a Fourth Amendment standard of reasonableness under the totality of the circumstances. To make out such a claim, the governing standard in this circuit is that "[i]f under the totality of the circumstances, a police officer unreasonably seizes a person by using excessive force, he has violated that person's Fourth Amendment rights. The objectively unreasonable seizure itself (regardless of the officer's motive or whether any injury inflicted was severe) crosses the constitutional threshold." Lester v. City of Chicago, 830 F.2d 706, 712 (7th Cir.1987).
 
 
 14
 Lester's promulgation, however, does not call Simpkins's waiver into question. First, even before Lester a plaintiff could choose to bring an "excessive force" claim under the Fourth Amendment. Cf. Bell v. City of Milwaukee, 746 F.2d 1205, 1278 n. 87 (7th Cir.1984) (applying Fourth Amendment analysis). Simpkins's failure to do so strongly suggests that she was not claiming--responsibly--that Dickenson "seized" her, a necessary condition for the Fourth Amendment to come into play. Second, the disagreement between the majority and concurring opinions in Gumz, and the conflict among the circuits which both opinions in Gumz discuss, would have spurred Simpkins to raise a Fourth Amendment argument if one could have been credibly interposed. Cf. Williams v. Boles, 841 F.2d 181, 184 (7th Cir.1988). Third, and most important, even when Simpkins's allegations are read in the light most favorable to her, Dickenson never "seized" her. A reasonable person in Simpkins's position would have believed that she was free to leave. See, e.g., Michigan v. Chesternut, --- U.S. ----, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988).
 
 
 15
 In fact, Simpkins's complaint cites Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and subsequent briefs filed in the district court confirm that what Simpkins really protests is that Dickenson exerted mental pressure upon her to incriminate herself during his interrogation, which she contends violates the Sixth Amendment. This is not a Fourth Amendment case. Lester therefore did not somehow revive an abandoned claim. The district court's judgment of dismissal is
 
 
 16
 AFFIRMED.
 
 
 
 *
 Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, sitting by designation
 
 
 [1]
 We accordingly do not reach whether Simpkins adequately alleged that Tice and the Hospital were willing participants with Dickenson in some conspiracy, or that Dickenson coerced or otherwise significantly encouraged the Hospital and Tice to suspend and then fire Simpkins. We also do not reach whether in any event Simpkins has adequate state remedies to cure her alleged injuries
 
 
 [2]
 The complaint states that pertinent parts of the handbook are attached to the complaint, but they are not found in the record